STATE OF ARKANSAS )
) SS.   **AFFIDAVIT OF CALVIN T. REED**
COUNTY OF SALINE )

For his affidavit (which supplements his deposition given February 18, 2014), Calvin T. Reed states under oath as follows:

1. Since the deposition, I have given some thought to the question of how long Mr. Westbrook was in the restraint chair. I believe he was in the chair for approximately 45 minutes. That is an estimate, but it is my best estimate.

2. Shortly after the incident, I prepared an Officer's Report Form for my Sergeant, Mike Richards, regarding what had occurred. The report is a near-contemporaneous recitation of the facts of this case, and should be a part of the record. It is attached hereto as Exhibit F-1.

Dated this 14th day of May, 2014.

_____
CALVIN T. REED

Subscribed and sworn to be fore me on this 14th day of May, 2014.

RHONDA MALONE
MY COMMISSION # 12389493
EXPIRES: October 4, 2022
Saline County

_____
Notary Public

EXHIBIT F

## SALINE COUNTY SHERIFF'S DEPARTMENT
## OFFICER'S REPORT FORM

**TO:** SGT. Mike Richards  
**DATE:** May 8, 2011  
**FROM:** Deputy Calvin Reed #849  
**SUBJECT:** Westbrook, Anthony

On the above date at 7:35 pm I was called on the radio to assist Deputy McCloud with a situation in the book-in area. When I arrived in book-in I was informed by McCloud that Westbrook had reached across the counter and grabbed some papers. Westbrook denied doing any of the things that McCloud said that he did. The papers that McCloud showed me was the ADR and book-in papers that the jailors need to process inmates. I walked Mr. Westbrook over to the restraint chair and sat him down in the chair. During this time Westbrook continued denying grabbing the papers. He then changed his story and said "The bald headed man told me to grab the papers". While explaining to Mr. Westbrook that he was not supposed to step across the yellow line and reach over the counter he kicked his leg up at me. I then rolled the restraint chair into the multi-purpose room and shackled to the door to prevent him from moving the chair around the room. Mr. Westbrook was still able to move his legs enough to kick over a chair. Mr. Westbrook told me and Deputy McGuire that he had to use the bathroom. McGuire and I went into the multi-purpose room and explained to Westbrook that his bondsman revoked his bond and that he was not getting out of jail. When he stood up from the chair I glanced to at his groin area to check if he had urinated on himself and found no obvious signs that he had anything of that nature. There were no further incidents with Mr. Westbrook and no other actions were taken against him.

EXHIBIT F-1

REED, CALVIN #849  
DETENTION DIVISION